IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RASHAAD TIWANIA JONES,

    Petitioner,

v.                                        CIVIL ACTION NO. 2:13cv1

HAROLD W. CLARKE,
Director, Virginia Department of Corrections,

    Respondent.

## *MEMORANDUM OPINION AND ORDER*

This matter is currently before the Court on Petitioner Rashaad Jones' objections to the Magistrate Judge's Report and Recommendation on Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Magistrate Judge's Report and Recommendation is **ADOPTED IN PART** and **REJECTED IN PART**. Respondent's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. Petitioner's Petition is **GRANTED IN PART** and **DENIED IN PART**, and Petitioner's conviction and sentence before the Circuit Court for the City of Williamsburg and the County of James City are hereby **VACATED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On August 11, 2010, Petitioner was convicted after a bench trial in the Circuit Court of the City of Williamsburg and County of James City of grand larceny and breaking and entering. Dkt. No. 6-1. Both charges arose from the theft of a television from the home of an

1

acquaintance. On November 5, 2010, Petitioner was sentenced to fifteen years on each count, to run consecutively. Twenty years of that total sentence was suspended, resulting in a term of ten years of imprisonment. *Id.* Petitioner's direct appeals to the Court of Appeals of Virginia and the Supreme Court of Virginia challenging the sufficiency of the evidence were denied on July 13, 2011 and December 2, 2011 respectively. Dkt. Nos. 6-2, 6-3. Petitioner then filed a state habeas petition with the Supreme Court of Virginia raising, *inter alia*, five separate claims of ineffective assistance of trial counsel. That petition was denied on October 11, 2012. Dkt. No. 1-3.

Petitioner then timely filed the instant federal habeas petition pursuant to 28 U.S.C. § 2254, raising the five claims of ineffective assistance of counsel as well as the sufficiency claim. On March 11, 2013, Respondent filed a Motion to Dismiss and supporting brief and an Answer. Dkt. Nos. 4, 5, & 6. Petitioner filed a Response in Opposition on April 25, 2013. Dkt. No. 10. On September 19, 2013, United States Magistrate Judge Douglas E. Miller entered a Report and Recommendation ("R&R"). Dkt. No. 12. Magistrate Judge Miller recommended granting Respondent's Motion to Dismiss and denying Petitioner's habeas petition. Petitioner then filed objections to the R&R's disposition of two of the ineffective assistance of counsel claims. Dkt. No. 15. Respondent did not file a response within the allotted time, so this matter is ripe for decision.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure, a district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." The "de novo" requirement means that a district court judge must give "fresh consideration" to the objected-to portions of the Magistrate Judge's report and

recommendation. *United States v. Raddatz*, 447 U.S. 667, 675 (1980). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Those portions of the R&R that are not objected to are subject to review for clear error. *Merritt v. Hoke*, 2:10-CV-47, 2011 WL 198104 at *1 (N.D. W. Va. Jan. 18, 2011); *Jack Schwartz Shoes, Inc. v. Skechers USA, Inc.*, 233 F. Supp. 2d 512, 513 (S.D.N.Y. 2002).

Petitioner's claims of state court error raised in a 28 U.S.C. § 2254 petition are also subject to the deferential framework of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant relief under that statute only where an adjudication of a claim on the merits in the state court either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Under this framework, "a habeas court must determine what arguments or theories supported or . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

In the context of an ineffective assistance claim, a habeas court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quotation omitted). Under *Strickland v. Washington*, 466 U.S. 668 (1984), an ineffective assistance of counsel claim requires a showing of 1) deficient performance by the attorney and 2) resulting prejudice to the defendant. "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." *Harrington*, 131 S. Ct. at 787 (quotation omitted). "With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation omitted).

### III. DISCUSSION

The Court has reviewed the unobjected-to portions of the R&R and finds no clear error therein. Accordingly, the R&R's resolution of Petitioner's sufficiency claim and of his third, fourth, and fifth ineffective assistance of counsel claims is **ADOPTED** in full.

Petitioner's first set of objections pertain to his first claim of ineffective assistance of counsel, which maintains that his counsel erred in responding to the Commonwealth's proof at trial as to the value of the stolen television. He first contends that his trial counsel was ineffective for failure to object to a "leading" question. After the owner of the television testified that he "wasn't sure" what the value of the television was, the prosecution asked if it was in excess of $200, and the victim responded that it was. Trial Tr. at 13-14. Defense counsel did not object, but the Supreme Court of Virginia held that there was no violation of *Strickland*. It reasoned that there was neither deficient performance nor prejudice because the Commonwealth

4

could have simply rephrased the question, because trial counsel thought it equally likely that the witness would answer the question in the negative, thereby creating a benefit for Petitioner, and because there was no evidence that the testimony would have been different had the question been rephrased. Dkt. No. 1-3 at 2. Petitioner has not made a showing that the state court's rejection of his claim was unreasonable. Trial counsel's explanation for her decision not to object was a reasonable strategic decision. In her affidavit, she also indicated that she did not wish to alienate a non-adversarial witness. Petitioner claims that it is clear that the witness's answer to the first question shows that he did not know the value of the television, but the witness could also have understood that he was only to answer if he knew the exact value, rather than a range of values, of the television.

Within his first claim of ineffective assistance, Petitioner also contends that his trial counsel was ineffective for failing to move set aside the grand larceny verdict or to strike the evidence sustaining the verdict because the evidence was insufficient to reliably show the fair market value of the television. In rejecting this argument, the Supreme Court of Virginia stated that the testimony of the owner of stolen property is sufficient under Virginia law to establish its value, and that counsel therefore had no valid basis upon which to make the relevant motions. Dkt. No. 1-3 at 3. Petitioner's primary response is that even accepting that, the victim's answer was too vague to indicate whether that was the fair market value of the television at the time it was stolen. But given the at least equally reasonable possibility that the comment could be so understood, in the context of a "doubly deferential" review for reasonableness, this argument simply fails to show that the state court's resolution of this claim was an unreasonable application of *Strickland*.

Petitioner's second claim of ineffective assistance of counsel is that the fingerprint evidence admitted at trial was inadmissible under the Confrontation Clause of the Sixth Amendment of the United States Constitution. Police investigator Karen Shuler testified that she responded to a report of the break-in at the home. She testified that she took several fingerprints from the broken window that she determined was the likely point of access. What follows are relevant portions of the rest of her testimony on direct examination:

> Shuler: I lifted approximately five latent print cards and I sent these to the lab for analysis. I could not say which one was really good. I mean it looked—by my visual it looked good but I can't testify—
> Commonwealth: You're not an expert to qualify those prints, correct?
> Shuler: Right.
> Commonwealth: But you lifted five prints from that window area?
> Shuler: [Yes.]
> Commonwealth: And when you say you lifted five print cards do you identify each of those cards with an item number?
> Shuler: I do.
> Commonwealth: And I'm going to ask you to look at your notes in your report and specifically item number two, do you recall where item number two the print card was lifted from?
> Shuler: Yes, I do. It was located just to the left a couple of inches from where actually the hole was in the glass that I believe was reached in to unlock the window.
> Commonwealth: And item number two was sent to the division of forensic science?
> Shuler: Yes, sir, it was.
> Commonwealth: Your Honor, I would submit as Commonwealth Exhibit Number 2 the Certificate of Analysis which has item number two identified and the conclusions from the lab. [The Exhibit was admitted without objection.] Ma'am, after—did you receive results back from the lab?
> Shuler: I did.
> Commonwealth: And the results from the lab to [sic] identify the fingerprint from the window as being that of a Rashaad Tiwania Jones, correct?
> Shuler: Yes.

Trial Tr. 31-33. As is evident, Petitioner's trial counsel never objected to the admission of the certificate, or to anything else. On cross-examination, she asked only for clarification on how many prints were taken and from where. Trial Tr. 33-35.

6

In his petition, Petitioner contends that trial counsel provided ineffective assistance because she failed to conduct adequate pre-trial investigation regarding the fingerprints, failed to call as a witness the expert who had conducted the analysis, and failed to object to the admission of the certificate on the grounds that its admission violated Petitioner's Confrontation Clause rights as established by *Crawford v. Washington*, 541 U.S. 36 (2004), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The Supreme Court of Virginia rejected these contentions, reasoning that trial counsel stated that she had conducted pretrial investigation and that Petitioner failed to proffer what evidence the forensic expert who conducted the analysis would have provided or how such evidence would have undermined the evidence. It further stated that trial counsel's decision not to challenge the admissibility of the certificates was reasonable because she knew petitioner had been at the scene shortly before the crime and that his fingerprints likely would have been found there. Dkt. No. 1-3 at 4-5.

At this point, it is helpful to the resolution of this claim to review in the entirety the relevant portion of trial counsel's affidavit:

> Adequate pre-trial investigation was conducted and the undersigned had no reason to question the admissibility of the fingerprint evidence. Based on the police reports and discovery materials, counsel had reason to believe that the defendant's fingerprints would likely have been found on the scene due to his presence there on a different occasion. The undersigned is aware that counsel can require the prosecution to present at trial the testimony of the scientific expert who conducted the analysis, but the undersigned made the decision not to challenge the admission of the certificate of analysis since no basis existed for doing so and nothing appeared to be gained by challenging to [sic] admission of the certificate of analysis. Given the above, there was no basis for moving to set aside the verdict based on the *Cypress* case [*Cypress v. Commonwealth*, 699 S.E.2d 206 (Va. 2010)] rendered after conviction but before sentencing.

Although neither the trial counsel's affidavit nor the Supreme Court of Virginia's decision explicitly said so, there is little dispute that had trial counsel objected when the Commonwealth attempted to introduce the fingerprint analysis, she could have successfully

7

challenged the admissibility of the certificate. Petitioner's trial took place just over a year after the United States Supreme Court's decision in *Melendez-Diaz*, a case mentioned neither by the Virginia Supreme Court nor by trial counsel in her affidavit. In *Melendez-Diaz*, the Supreme Court held that it violated the Sixth Amendment right of a defendant to confront the witnesses against him to admit lab certificates stating that drugs found in a defendant's possession were cocaine. Like the certificate in that case, the fingerprint analysis here was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and were "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." 557 U.S. at 311 (quotation omitted). Therefore, like the defendant in *Melendez-Diaz*, Petitioner was entitled to be confronted with the analyst(s) who created the certificate, absent a showing that they were unavailable to testify and that Petitioner had a prior opportunity to cross-examine them. *Id.* Otherwise, trial counsel could have successfully precluded the introduction of the certificate at trial had she objected.

It is therefore apparent to the Court that counsel's decision not to object was deficient performance under the first prong of *Strickland*. In rejecting Petitioner's state habeas petition, however, the Supreme Court of Virginia reasoned that trial counsel reasonably concluded that Petitioner's fingerprints would have been at the scene because he was there at a different occasion. But this misapprehends trial counsel's affidavit in light of the evidence presented at trial. At trial, the only two witnesses were Investigator Shuler, whose principle testimony is excerpted above, and the owner of the television, Jereme Joseph. At the time of the television theft, he was not living at the house because he was having construction work performed at his residence. However, Mr. Joseph indicated that while he was living there, Petitioner had come to

his home on one occasion. Trial Tr. 15. He also clearly stated that Petitioner entered through the front door and sat in the family room. Trial Tr. 16. But the fingerprint was found on a windowpane on the rear of the house, and as the judge noted, there was no evidence "that [Petitioner] went outside and touched that window." Trial Tr. 39. For trial counsel to assume that the print was from that prior occasion was unreasonable, as was the Supreme Court of Virginia's acceptance of that assumption.

While trial counsel certainly has leeway to make reasonable strategic decisions, the term "strategic decision" implies a choice that carries *both* costs and benefits. Here, there was no apparent cost to objecting to the fingerprint certificate, and only a significant benefit to be gained. Unlike the potential objection to the "leading" question about the value of the television, trial counsel pointed to no risk of alienating a non-adversarial witness. In fact, the only apparent way to impeach the certificate of analysis Investigator Shuler presented would be to exclude it completely or, had the prosecution been prepared to present the analyst (and the Commonwealth now gives no indication that it would have), to find some way to undermine that analysis. As Investigator Shuler self-professed to not be an expert as to analysis, trial counsel had no opportunity to challenge the fingerprints analysis on her cross-examination alone. Trial counsel's performance was therefore deficient as it fell below an objective standard of reasonableness, and the Court finds no conceivable basis for upholding the Supreme Court of Virginia's conclusion to the contrary, which was an unreasonable application of *Strickland*.

*Strickland* also requires Petitioner to show that his trial counsel's deficient performance prejudiced him. The record reflects that it did. This case is unusual because it was a bench trial where the judge stated his findings of fact on the record. Moreover, the Commonwealth's entire case consisted of two witnesses, unlike many cases where the evidence is overwhelming and the

9

questioned evidence therefore plays only a small role in a defendant's conviction. The Commonwealth first called Mr. Joseph (the owner of the television) to testify. After explaining how he was acquainted with Petitioner, Mr. Joseph stated that after Petitioner was arrested and in jail, he went to visit him. He spoke with him "for a few seconds" and testified that Petitioner said that "he made a mistake or whatever and that's what happened." Trial Tr. 17-18. The Commonwealth then called Investigator Shuler, who testified that the point of entry appeared to be a window and that Petitioner's fingerprints were found there. Trial counsel called no witnesses.

In her argument at the conclusion of the evidence, trial counsel herself emphasized that "[t]here is one item that connects my client with the property and it is a fingerprint." Trial Tr. 38. The judge said that while the fingerprint alone would not be sufficient to convict Petitioner, there was also the testimony that Petitioner told the owner of the television that it was a mistake. The judge concluded: "I think when you take the fingerprint and combine it with the recent visit and you combine it with the statement I think that's sufficient beyond a reasonable doubt and the Court will find him guilty." Trial Tr. 40. It is evident that the judge therefore relied on both pieces of evidence (the fingerprint and Petitioner's statement to Mr. Joseph) to arrive at the conclusion that Petitioner was guilty beyond a reasonable doubt. Therefore, had trial counsel been able to exclude or undermine the fingerprint analysis, it is likely to have had a significant impact on the likelihood of Petitioner's conviction.

The Supreme Court of Virginia did not discuss the obvious centrality of the fingerprint evidence in the Commonwealth's case. Instead, it seemed to conclude that there was no prejudice in not objecting to the certificate of analysis because there was no evidence that the testimony of the analyst would have undermined the validity of the certificate. But there is also

no evidence that the analyst would have been available or prepared to testify, as the Commonwealth does not say in its Response that it would have called the analyst had trial counsel objected.

In her affidavit, trial counsel provides little detail to support her conclusory assertion that she had no reason to question the admissibility of the certificate, other than referencing Petitioner's prior presence at the house. She did not indicate, for example, that she spoke with the analyst and concluded that an inquiry into their methods would have been fruitless. Instead of requiring Petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," which Petitioner has already done, the Supreme Court of Virginia appears to have required Petitioner prove either that the internal workings of the crime lab were flawed in some way or that he was conclusively innocent and so could not have had his fingerprints at the window. Such a high burden not only contravenes *Strickland* but effectively "convert[s] the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law." *Melendez-Diaz*, 557 U.S. at 324. Such reasoning also assumes that such certificates are inherently reliable, even though the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. The state court finding of no prejudice therefore was an unreasonable application of *Strickland*.

Though the Court recognizes that it is the unusual case in which it is appropriate to grant habeas relief to a state prisoner raising an ineffective assistance of counsel claim, where there is a clear error and where the record is equally clear that such an error made a difference, relief is appropriate. Accordingly, the Court concludes that trial counsel provided ineffective assistance which prejudiced Petitioner. Accordingly, Petitioner's conviction and sentence must be vacated.

## IV. CONCLUSION

As set forth above, the Magistrate Judge's Report and Recommendation is **ADOPTED IN PART** and **REJECTED IN PART**. Respondent's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. Petitioner's Petition is **GRANTED IN PART** and **DENIED IN PART**, and Petitioner's conviction and sentence before the Circuit Court for the City of Williamsburg and the County of James City are hereby **VACATED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
March /2, 2014

Raymond A. Jackson
United States District Judge